UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LUIS VEGA, and<br>DANIEL ZUNIGA | Crim. No.: 18-224 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a motion to disqualify counsel for Defendant Luis Vega ("Defendant"), Charles Dawkins Jr., Esq., by the United States, being represented by Craig Carpenito, United States Attorney for the District of New Jersey (by Desiree Grace Latzer and Robert Frazer, Assistant U.S. Attorneys), because of a conflict of interest. (ECF No. 33). Defendant has opposed the Government's motion. (ECF No. 34). For the reasons set forth below, the Court finds that Mr. Dawkins's prior representation of Ramon Vega, an unindicted co-conspirator of Defendant, creates an actual or serious potential conflict of interest, such that Mr. Dawkins must be disqualified as Defendant's counsel.

## I. BACKGROUND

The seven-count Superseding Indictment presently before the Court charges Defendant with conspiracy to distribute cocaine and marijuana relating to activity that transpired in Essex County, New Jersey, between April 2015 and March 2018. (ECF No. 28). The Superseding Indictment charges that Defendant "operated the drug distribution business from a house located on Clifton Avenue in Newark, New Jersey known as 'the Pink House'" together with two

1

unindicted co-conspirators, Ramon Vega—Defendant's father—and Adalberto Garcia. (ECF No. 28 at 2). The conduct that occurred at the Clifton Avenue house was also the basis for the indictments of Ramon Vega and Adalberto Garcia in the Superior Court of New Jersey, Essex County. (ECF No. 33 ("Gov. Br.") at 1; ECF No. 34 ("Def. Br.") at 4–5). In December of 2017, after a multi-week jury trial, Ramon Vega was found guilty of various narcotics charges resulting from the execution of a search warrant at the Clifton Avenue house in August of 2016. (Gov. Br. at 2; Def. Br. at 4). Mr. Dawkins represented Ramon Vega in those proceedings as of November 2016. (Gov. Br. at 2). Ramon Vega was sentenced to thirty-two years' imprisonment with sixteen years of parole ineligibility, and his appeal is currently pending. (Def. Br. at 9). Mr. Dawkins has since ceased his representation of Ramon Vega. (Gov. Br. at 2 n.1; Def. Br. at 6).

The Government argues that, having represented Ramon Vega in the Essex County Superior Court criminal proceedings, Mr. Dawkins's continued representation of Defendant in these proceedings creates an actual or serious potential conflict of interest such that Mr. Dawkins cannot continue to represent Defendant consistently with Defendant's Sixth Amendment right to adequate representation and with the New Jersey Rules of Professional Conduct. (Gov. Br.). Defendant argues that disqualification of Mr. Dawkins is not warranted because no such conflict exists or, if any such conflict exists, it is curable by Defendant's waiver. (Def. Br. at 6–7).

## II. **LEGAL STANDARD**

"The Sixth Amendment guarantee of effective assistance of counsel" includes a "correlative right[] . . . to the attorney's undivided loyalty free of conflict of interest." *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988). Also arising out of the Sixth Amendment is "a presumptive right to the counsel of one's own choice," which must be weighed against the

defendant's right to conflict-free representation. *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991). A district court must therefore "recognize a presumption in favor of [the defendant's] counsel of choice, but that presumption may be overcome . . . by a demonstration of actual conflict [or] by a showing of a serious potential for conflict." *Wheat v. United States*, 486 U.S. 153, 164 (1988). The Government bears the initial burden of proving either an actual conflict of interest or a serious potential for conflict. *Moscony*, 927 F.2d at 750. In the presence of a conflict, "a defendant 'may waive [the] conflict . . . and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary.'" *United States v. Fawkes*, 510 F. App'x 183, 187 (3d Cir. 2013) (quoting *Yeboah–Sefah v. Ficco*, 556 F.3d 53, 68 (1st Cir. 2009)). However, a district court nevertheless "has discretion to disqualify counsel if [an actual or] potential conflict exists, even where the represented parties have waived the conflict." *United States v. Stewart*, 185 F.3d 112, 122 (3d Cir. 1999) (quoting *Wheat*, 486 U.S. at 164).

On a motion to disqualify counsel for a conflict of interest, therefore, the Court's inquiry is twofold: "(1) first, [the Court] will determine whether the Government has satisfied its burden in establishing the presence of an actual or serious potential conflict of interest concerning Defense counsel's continued representation of the Defendant; and (2) if so, it will determine whether a waiver of conflict or other curative measure is appropriate under the circumstances in lieu of a formal disqualification." *United States v. Lacerda*, 929 F. Supp. 2d 349, 356 (D.N.J. 2013).

### III. ANALYSIS

#### A. Conflict of Interest

In considering whether an actual or potential conflict exists, "the Court is . . . guided by an additional set of rights '[s]temming not from the Sixth Amendment but from ethical precepts that

3

govern the legal profession'—the Code of Professional Responsibility that regulates attorney conduct." *Id.* at 355 (quoting *United States v. Kolodesh*, No. 11-464, 2012 WL 1156334, at *4 (E.D. Pa. Apr. 5, 2012)). New Jersey's Rules of Professional Conduct define a "concurrent conflict of interest" as a situation in which "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, [or] a former client." N.J. R. Prof'l Conduct 1.7(a). The Rules further provide that "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which the client's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing." N.J. R. Prof'l Conduct 1.9(a). Finally, the Rules provide that a "lawyer who has formerly represented a client in a matter . . . shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client" or "(2) reveal information relating to the representation" except as otherwise permitted or required by the Rules. N.J. R. Prof'l Conduct 1.9(c).

The Government argues that Mr. Dawkins's prior representation of Ramon Vega creates an actual conflict of interest (or, at minimum, a serious potential conflict) with his current representation of Defendant in this case—in violation of these Rules and Defendant's Sixth Amendment right to conflict-free representation—in the following ways: (1) Ramon Vega is unable to consider potential cooperation against Defendant for a possible reduction of Ramon Vega's sentence because of his shared counsel with Defendant; (2) Mr. Dawkins is unable to use information that he obtained during his representation of Ramon Vega to Defendant's benefit in the present case, nor is Mr. Dawkins able to pursue a strategy of shifting blame to Ramon Vega because of his ongoing duties to Ramon Vega as a former client; and (3) as Ramon Vega, an unindicted co-conspirator, is a potential witness in this case and may be called to testify, Mr.

Dawkins would be unable to cross-examine him without encountering his divided loyalties. (Gov. Br. at 4–5).

The Court finds that the Government has met its burden of showing that Mr. Dawkins's prior representation of Ramon Vega presents an actual or potential conflict of interest. Mr. Dawkins's ongoing duties to Ramon Vega as a former client impermissibly divide Mr. Dawkins's loyalties. *See United States v. Roland*, No. 12-298, 2016 WL 820951, at *9 (D.N.J. Mar. 1, 2016) ("An actual conflict of interest exists . . . when the attorney's representation of the defendant is impaired by loyalty owed to a prior client.") (quoting *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (quotation marks omitted)). The Court is particularly concerned about Defendant's inability, were Mr. Dawkins to remain as counsel, to pursue a strategy shifting blame to Ramon Vega, as well as Mr. Dawkins's inability to cross-examine Ramon Vega should the Government call him as a witness.

Furthermore, Mr. Dawkins is prohibited by the Rules of Professional Conduct from remaining as counsel without waivers from Defendant and Ramon Vega. Defendant's case is "substantially related" to Ramon Vega's case within the meaning of Rule 1.9(a), because, in the course of their attorney-client relationship, Mr. Dawkins "received confidential information from [Ramon Vega] that can be used against [him] in the subsequent representation" of Defendant, or, because the two cases arise from the same alleged conspiracy, "facts relevant to the prior representation [of Ramon Vega] are both relevant and material to the subsequent representation" of Defendant. *Id.* at *10 (quoting *City of Atlantic City v. Trupos*, 201 N.J. 447, 452 (2010)).

Mr. Dawkins argues that his loyalties are not divided and that Defendant and Ramon Vega are in fact unified in interest, reasoning that "[i]f Mr. Ramon Vega is in fact innocent of the crime then no conspiracy exists." (Def. Br. at 5; *see also* Def. Br. at 6 ("Counsel lacks a divided interest

. . . because as the government investigates this case it is going to become abundantly clear that Mr. Ramon Vega is innocent."). But Mr. Dawkins's argument itself illustrates one of the Government's concerns: that Mr. Dawkins's conflict-free representation of Defendant requires adherence to the defense of Ramon Vega's innocence. Mr. Dawkins's conflict inhibits him from acknowledging Ramon Vega's role in the alleged conspiracy, even if that argument would benefit his current client, Defendant. Accordingly, the Court concludes that a conflict of interest is present. *See Moscony*, 927 F.2d at 749 (an attorney's loyalties may be divided "due to concurrent or prior representation of another client who is . . . a co-conspirator, or a government witness").

### B. Waiver of the Conflict

Although no formal waiver has yet been proffered, Mr. Dawkins represents that Defendant "wants [Mr. Dawkins] to represent him[,] and is willing to waive conflict of interest." (Def. Br. at 7). Mr. Dawkins offers no assurances that Ramon Vega would likewise waive the protection of his attorney-client privilege, and asks the Court to reserve consideration of these potential waivers after both Defendant and Ramon Vega have a better "understanding of the [Government's] Discovery." (Def. Br. at 13). The Government argues that, "even if both [Defendant] and Ramon Vega agree to waive any actual or potential conflict, and even if the Court creates a clear record that the waivers are knowing and voluntary, the Court has the discretion to reject the waiver[s]." (Gov. Br. at 5).

Indeed, even if both Defendant and Ramon Vega were to formally waive the conflict, the waivers would not necessarily end the Court's inquiry,

> for the trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver. Moreover, to protect

6

> the critically important candor that must exist between client and attorney, and to engender respect for the court in general, the trial court may enforce the ethical rules governing the legal profession with respect . . . to conflict-free representation, again regardless of any purported waiver. Finally, the court has an independent interest in protecting a fairly-rendered verdict from trial tactics that may be designed to generate issues on appeal.

*Moscony*, 927 F.2d at 749. Accordingly, "not only when an actual conflict is found, but when there is 'a showing of a serious potential for conflict,' the presumption in favor of a defendant's counsel of choice is overcome and the trial court may disqualify counsel and reject the defendant's waiver of conflict-free representation." *Id.* at 750 (quoting *Wheat*, 486 U.S. at 164). The Court is tasked with determining whether to reject a defendant's waiver of a conflict "not with the wisdom of hindsight," but rather "in the murkier pre-trial context." *Wheat*, 486 U.S. at 162. At this stage, because the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, . . . the district court [is] allowed substantial latitude in refusing waivers of conflicts of interest." *Id.* at 162–63.

The Court finds that Mr. Dawkins's prior representation of Ramon Vega raises a serious enough potential for conflict that he cannot continue to represent Defendant consistently with Defendant's Sixth Amendment right to conflict-free representation, even if Defendant were to provide a voluntary waiver. In affirming the disqualification of an attorney whose former clients were likely to be government witnesses in a case against the defendant, the Third Circuit emphasized the risk that the attorney "could use the information obtained from [his former clients] to cross-examine, and possibly impeach, them at [the defendant's] trial, but this he could not do without revealing information 'relating to' his representation of them." *Moscony*, 927 F.2d at 750 (citations omitted). Indeed, the Third Circuit was unequivocal in holding that "[c]onflicts of

interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *Id.* (citations omitted).

Such is the case here. The Government represents that "Ramon Vega is a potential witness in this case . . . [and] may be called at any point in the trial." (Gov. Br. at 4). Were Ramon Vega to be called as a government witness, vigorous cross-examination of him would be central to Defendant's defense. If such cross-examination were foregone, Defendant could be deprived of his right to effective assistance of counsel, and if pursued, it would violate ethical standards mandating the protection of Ramon Vega's privileged communications with Mr. Dawkins. *See Moscony*, 927 F.2d at 748 (affirming district court's similar reasoning). For this reason, the Third Circuit has upheld disqualifications of attorneys whose former clients were co-conspirators of the defendant or potential government witnesses. *See, e.g., Stewart*, 185 F.3d at 121 (affirming disqualification of attorney who had previously represented government witnesses, noting that defendant's "right to effective counsel could have been compromised by the divided loyalties of his own attorney," notwithstanding the fact that the witnesses were not co-defendants in the trial); *United States v. Voigt*, 89 F.3d 1050, 1078 (3d Cir. 1996) (affirming district court's disqualification of attorney, reasoning that, "[s]ince there was a strong possibility that [the witness] might face cross-examination by a former attorney, there was a serious potential for a conflict of interest which . . . warranted disqualification"); *see also United States v. Cooley*, 243 F. Supp. 2d 329, 334 (W.D. Pa. 2003) (disqualifying attorney who had previously represented two government witnesses whom he would be required to cross-examine at trial).

Accordingly, the Court concludes that the only way to guard Defendant's Sixth Amendment right to effective assistance of counsel, to "protect[] the truth-seeking function of the proceedings," and to avoid injecting potential error into this case, is to disqualify Mr. Dawkins

8

from further representation of Defendant. *Moscony*, 927 F.2d at 749. The Court reaches this determination based on the facts and arguments currently before it and without a hearing. *See Voigt*, 89 F.3d at 1075 (rejecting defendant's argument that a district court's denial of a defendant's chosen counsel must be based on a hearing and supported by factual findings, noting that a court may use "its 'instinct and judgment based on experience' when it weighs the competing rights of the litigant to counsel of his choice and wise judicial administration, . . . [so long as] the court makes a 'reasoned determination on the basis of a fully prepared record.'") (quoting *Fuller v. Diesslin*, 868 F.2d 604, 611, 609 n.4 (3d Cir. 1989)).

## IV. **CONCLUSION**

For the foregoing reasons, the Court grants the Government's motion to disqualify Mr. Dawkins, counsel for Defendant Luis Vega. An appropriate Order accompanies this Opinion.

DATED: January 22nd, 2019

HON. JOSE L. LINARES
Chief Judge, United States District Court