NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 2:18-CR-00224-BRM |
| DANNY ZUNIGA and LUIS VEGA, | : | |
| Defendants. | : | **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Motions by Danny Zuniga ("Zuniga") and Luis Vega ("Vega") (collectively, "Defendants") to sever their cases for purposes of trial, pursuant to Federal Rule of Criminal Procedure 14. (ECF Nos. 69, 108.) Plaintiff, the United States of America (the "Government"), opposed Defendants' Motions. (ECF No. 108.) Defendants filed replies. (ECF Nos. 108-2, 108-3.) The court heard oral argument on November 20, 2020 (ECF No. 107) and requested supplemental briefing. The Government further opposed Defendants' Motions. (ECF No. 109.) Defendants filed supplemental briefs in support of their Motions. (ECF Nos. 109-1, 109-2.) Having reviewed the parties' submissions filed in connection with the Motions and having heard oral argument, for the reasons set forth below and for good cause having been shown, Defendants' Motions for severance are **GRANTED**.

**I.  BACKGROUND**

    **A.  Factual Background**

On or about March 18, 2018, members of the Union County Prosecutor's Office ("UCPO") executed a search warrant ("the UCPO Search Warrant") at 219 Emmet Street in

Newark, New Jersey, related to a shooting in Elizabeth, New Jersey that had occurred on March 17, 2018. (ECF No. 108-1 at 1.) The UCPO had learned during the course of their shooting investigation that their victim had left 219 Emmet Street—which was operated as a nightclub (the "Nightclub")—shortly before being shot. (*Id*.) As a result, the UCPO sought and obtained a search warrant to recover surveillance footage from the Nightclub. (*Id*.) When the UCPO officers attempted to execute the search warrant, Zuniga met them at the location and granted them access to the Nightclub by unlocking the front locks and doors with keys. (*Id*. at 2.) Zuniga informed the UCPO officers that Vega directed him to do so. (*Id*.) The Government alleges Zuniga said he and his brother-in-law Vega rented and managed the location. (ECF No. 1 at 7.)

While executing the UCPO Search Warrant on the second floor of the Nightclub, the UCPO officers observed a black handgun, several glassine envelopes of a substance that appeared to be heroin, a sealed plastic bag containing a substance that appeared to be marijuana, several marijuana plants with high-powered grow lamps and a water filtration system, and a strong odor of marijuana in the vicinity of these marijuana plants. (ECF No. 108-1 at 2.) As a result of these inadvertent discoveries, the UCPO officers contacted the Newark Police Department ("NPD"). (*Id*.) Several NPD officers arrived and viewed the items that UCPO had previously discovered. (*Id*.) The NPD then obtained a search warrant ("the NPD Search Warrant"). (*Id*.) Execution of the NPD Search Warrant revealed firearms, ammunition, allegedly controlled dangerous substances, and drug-distribution paraphernalia. (*Id*.)

On March 27, 2018, Zuniga signed a proffer agreement with the Government. (*Id*.) The proffer agreement states in relevant part:

> 1. Should your client be prosecuted, no statements made by your client during the interview will be used against your client in the government's case-in-chief at trial or for purposes of sentencing, except as provided below . . .

> 4. The government may use your client's statements and any information provided by your client . . . to rebut any evidence or arguments offered on your client's behalf.

(ECF No. 69 at 13.) Zuniga allegedly provided in the proffer sessions information about the drug conspiracy and implicated Vega therein. (ECF No. 108-1 at 3.) Following the proffer, Zuniga signed a plea agreement on April 17, 2018. (*Id*.) After that, but before a guilty plea was entered before the Court, Zuniga obtained new counsel and indicated he no longer wished to plead guilty. (*Id*.)

Subsequent investigations revealed, in addition to running the Nightclub, Vega allegedly ran a drug operation at 246 Clifton Avenue in Newark, New Jersey. (*Id*.) Law enforcement executed search warrants at this location on January 11, 2016, which revealed firearms, ammunition, and allegedly controlled dangerous substances. (*Id*.)

### B.     Procedural Background

On March 20, 2018, Defendants were charged by the Complaint. (ECF No. 1.) On October 31, 2018, a federal grand jury sitting in Newark, New Jersey returned a superseding indictment against Defendants. (ECF No. 28.) The indictment charged Vega with Conspiracy to Distribute Cocaine and Marijuana in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), and (b)(1)(D) (Count One); Possession of a Firearm by a Convicted Felon in violation of Title 18, United States Code, Sections 922(g)(1) (Count Two); Maintaining a Drug-Involved Premises in violation of Title 21, United States Code, Section 856(a)(2) (Count Three); Carrying a Firearm During a Drug Trafficking Crime in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (Count Four); Possession of a Firearm by a Convicted Felon in violation of Title 18, United States Code, Sections 922(g)(1) and 2 (Count Five); Maintaining and Drug Involved Premises, in violation of Title 21, United States Code, Section 856(a)(2)(Count Six); and Carrying

a Firearm During a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (Count Seven). (*Id.*) The indictment charged Zuniga with Count One, Count Five, Count Six, and Count Seven. (*Id.*) Defendants were arraigned on the superseding indictment on November 19, 2018. (ECF No. 31.)

On January 8, 2020, Zuniga filed a motion for severance. (ECF No. 69.) On November 24, 2020, Vega filed a motion for severance. (ECF No. 108.) On July 30, 2020, the Government opposed Defendants' motions. (ECF No. 108-1.) On August 3, 2020, Zuniga filed a reply to the Government's opposition. (ECF No. 108-2.) On August 7, 2020, Vega filed a reply to the Government's opposition. (ECF No. 108-3.) The parties conducted an oral argument before this Court on November 20, 2020. (ECF No. 107.) On December 4, 2020, the Government further opposed Defendants' motions (ECF No. 109), and Defendants filed supplemental briefs in support of their motions for severance (ECF Nos. 109-1, 109-2).

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 14(a) provides a court may sever properly joined defendants, and a defendant seeking such relief bears a "heavy burden in showing prejudice from joinder." *United States v. Hudgins*, 338 F. App'x 150, 153 (3d Cir. 2009). The defendant must demonstrate a joinder would result in a "manifestly unfair trial." *Gov't of the V.I. v. Sanes*, 57 F.3d 338, 341-42 (3d Cir. 1995). It is not enough for the defendant to show he would have a greater chance of acquittal if the offenses were tried separately rather than together. *Id*. Once the defendant meets that burden, the Court may exercise its discretion to grant the motion to sever. *United States v. Boyd*, 595 F.2d 120, 125 (3d Cir. 1978). In exercising its discretion, the Court must weigh the potential undue prejudice to the defendant against the interests of judicial economy and any

potential undue prejudice to the Government. *United States v. Sandini*, 888 F.2d 300, 305 (3d Cir. 1989).

### III. DECISION

#### A. The Violation of Vega's Confrontation Rights Can Be Avoided in a Joint Trial

##### 1. Zuniga's Alleged Statements Must Be Redacted to Eliminate Any Reference to Vega's Existence

Defendants contend a Rule 14 severance is warranted here to avoid a violation of Zuniga's Fifth Amendment rights to present a defense and Sixth Amendment rights to the effective assistance of counsel, and Vega's Sixth Amendment confrontation rights. (ECF No. 69 at 11; ECF No. 108 at 10.) Zuniga insists the introduction the alleged statements of Zuniga, a non-testifying co-defendant, would violate Vega's Sixth Amendment confrontation rights. (ECF No. 69 at 12.) Defendants argue such a violation cannot be avoided by limiting instructions and redacting Zuniga's alleged statements by referring to Vega with a pronoun or vague descriptor, because a jury would no doubt think Zuniga was referring to his sole co-defendant Vega. (*Id.*; ECF No. 108 at 11–12.) Vega suggests the only way to protect Vega's Sixth Amendment confrontation rights is to redact Zuniga's alleged statements by eliminating any reference to Vega's existence, so that Zuniga's alleged statements would only include self-inculpatory statements. (ECF No. 108 at 11-13.) The Government maintains Zuniga's alleged statements can be sanitized by eliminating Vega's name and any reference to his existence. (ECF No. 108-1 at 7.) The Court Zuniga's alleged statements must be redacted eliminate any reference to Vega's existence, so as to avoid violating Vega's Sixth Amendment confrontation rights.

The Confrontation Clause guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[A] defendant is deprived of his confrontation rights when a non-testifying co-defendant's statement

is introduced at their joint trial, and that statement names the defendant as a participant in the crime charged." *United States v. Scott*, No. 1:09-CR-072-01, 2009 U.S. Dist. LEXIS 109553, at *7 (E.D. Pa. Nov. 24, 2009) (citing *Bruton v. United States*, 391 U.S. 123, 134–37 (1968)); *see also Johnson v. Tennis*, 549 F.3d 296, 298 (3d Cir. 2008) ("[I]n a joint criminal trial before a jury, a defendant's Sixth Amendment right of confrontation is violated by admitting a confession of a non-testifying codefendant that implicates the defendant, regardless of any limiting instruction given to the jury."). For "certain powerfully incriminating extrajudicial statements of a codefendant—those naming another defendant," the prosecutor must "redact the confession to reduce significantly or to eliminate the special prejudice that the *Bruton* Court found," "[u]nless the prosecutor wishes to hold separate trials or to use separate juries or to abandon use of the confession." *Gray v. Md.*, 523 U.S. 185, 192 (1998) (internal quotations omitted). "The Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Here, Zuniga's statements allegedly made to the law enforcement at the Nightclub on March 18, 2018, and in the proffer session on March 27, 2018, tend to inculpate both Defendants. (ECF No. 69 at 7; ECF No. 108 at 10.) Also, the Government intends to introduce Zuniga's alleged statements at trial (ECF No. 108-1 at 7–8), and Zuniga does not intend to take the stand (Draft Tr. Nov. 20, 2020 Oral Arg. ("Tr.") 22:4–5; ECF No. 108-2 at 5). Therefore, the Government must redact Zuniga's alleged statements to eliminate not only Vega's name, but any reference to Vega's existence, followed by proper limiting instructions.

"Redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration" do not always "eliminate

the special prejudice that the *Bruton* Court found," because "a jury will often react similarly to an unredacted confession and a confession redacted in this way," and "the obvious deletion may well call the jurors' attention specially to the removed name." *Gray*, 523 U.S. at 192–93. When another defendant "is the only person to whom [the non-testifying co-defendant] conceivably could have been referring in the statement," "[e]ven if the Government removes any specific mention of [another defendant's] name, there is a serious danger that the jury will infer that [the non-testifying co-defendant] was referring to him." *United States v. Kruckel*, No. 92-611, 1993 U.S. Dist. LEXIS 20777, at *28 (D.N.J. Aug. 13, 1993); *c.f. Priester v. Vaughn*, 382 F.3d 394, 401 (3d Cir. 2004) (holding *Bruton* was not violated because "there were at least fifteen perpetrators involved in the shooting, and the phrases 'the other guy' or 'another guy' are bereft of any innuendo that ties them unavoidably to" one particular defendant). The test is whether the co-defendant's statement directly and facially inculpates another defendant, regardless of any "inference drawn from linking other evidence to the statement." *Priester*, 382 F.3d at 400; *see also Phu Duc Nguyen v. Love*, 279 F. App'x 127, 130 (3d Cir. 2008) ("[T]he relevant inquiry under *Gray* is whether the prosecutor's comment directly inculpated [the defendant]."); *United States v. Evangelista*, 813 F. Supp. 294, 300 (D.N.J. 1993) ("permitting admissibility where the confession is facially non-incriminating to codefendants"). With proper redactions and limiting instructions, a co-defendant's confession that potentially inculpates another defendant allegedly involved in a same criminal conspiracy can be introduced in a joint trial. *See United States v. Herrera-Genao*, 419 F. App'x 288, 294–95 (3d Cir. 2011) (affirming the district court's decision to "(1) try the [d]efendants together and (2) eliminate any prejudice to [one defendant] by redacting [the other defendant's] confession"). Here, Zuniga and Vega are the only two defendants charged for a same drug conspiracy. Therefore, to introduce

Zuniga's alleged statements, merely referring to Vega with a pronoun or vague descriptor is not enough.

The Government has suggested how it may redact Zuniga's alleged statements. For Zuniga's alleged statements made on March 18, 2018, the Government proposes introducing Zuniga's statements that he operated a business at the location, but omit Zuniga's statements that Vega directed him to open the building for law enforcement. (ECF No. 108-1 at 7–8.) For Zuniga's alleged proffer statements, the Government claims it plans to introduce the fact that Zuniga provided extensive information about the inner workings of the drug conspiracy, without introducing Zuniga's statements implicating Vega or any statements made about Vega's operation of the conspiracy. (*Id*. at 8.) The Court finds the above proposed redactions can eliminate any reference to Vega's existence, and avoid violating Vega's Sixth Amendment confrontation rights.

## 2. Whether Vega May Cross-Examine Zuniga in a Severed Trial Is Irrelevant

Vega claims a severance is the only way that Vega may examine Zuniga in relation to Zuniga's alleged statements and introduce potentially exculpatory testimony from Zuniga. (ECF No. 108 at 13–14.) Vega argues, if Defendants' cases are not severed, he cannot compel Zuniga to testify and subject Zuniga to cross-examination. (ECF No. 109-1 at 1.) The Government contends Vega's argument is a mere conjecture and does not warrant severance. (ECF No. 108-1 at 9.) The Government explains: (1) even if Defendants' cases are severed, Vega cannot compel Zuniga to testify, and (2) Zuniga shows no intent to testify either in his own defense or in Vega's trial if their cases are severed. (*Id*.) The Court need not consider whether, if Defendants' cases are severed, Vega may have Zuniga to testify in Vega's separate case. Here, the Court need only examine whether certain constitutional rights of Defendants are violated when a severance is not granted.

In conclusion, if Defendants' cases are to proceed in a joint trial, Zuniga's alleged statements must be redacted to eliminate any reference to Vega's existence.

**B.     Zuniga's Constitutional Right To Present a Defense Will Be Violated in a Joint Trial**

Zuniga argues the admission of his alleged statements, including the proffer statements, is unavoidable at trial, whether by Zuniga himself in furtherance of his defense against any guilt of drug conspiracy or by the Government. (ECF No. 108-2 at 1.) To exercise Zuniga's Fifth Amendment right to present an effective defense, Zuniga feels compelled to challenge the alleged proffer statements as either being falsely attributed to him or clearly exculpating him. (ECF No. 69 at 14.) Defendants contend, if Zuniga's alleged statements are redacted or subject to limiting instructions, Zuniga's ability to explore these statements before a jury will be limited, which violates Zuniga's Fifth Amendment right to present a defense. (*Id*. at 15; ECF No. 108 at 13.) First, limiting instructions would instruct the jury not to consider Vega in relation to Zuniga's statements, which is the very essence of Zuniga's defense. (ECF No. 69 at 15.) Second, if Zuniga's alleged proffer statements are redacted, Zuniga would be unable to show the statements were fabricated, or the Government's desire to prosecute and convict Vega was the motivation behind the fabrication. (*Id*. at 16.) Omitting Vega from Zuniga's alleged proffer statements would: (1) make it seem to a jury that Zuniga's knowledge of the drug operation was because Zuniga, as Vega's brother-in-law, was involved in the drug conspiracy with Vega, and (2) create suspicion in the jury as to why Zuniga is protecting Vega when the evidence of Vega's drug operation is substantial. (ECF No. 108-2 at 3–4.) On the contrary, Vega's presence in Zuniga's statements would allow Zuniga to: (1) argue he is innocent and being prosecuted because of a failed attempt by the Government to squeeze Zuniga into cooperation against Vega, and (2) explain his presence at the Nightclub was not because of Zuniga's knowledge of or involvement with Vega's alleged drug

operations—Zuniga's statements could show the only person that the law enforcement communicated with and requested to be allowed access to the Nightclub was Vega, who sent Zuniga to the Nightclub with the keys to allow the law enforcement to enter the Nightclub. (*Id*. at 3 nn.2, 4.) Third, Zuniga maintains, because some of his proffer statements tend to exculpate him, redacting the statements would render Zuniga unable to show to the jury the statements (1) are not self-inculpating, and (2) indicate the Government's target was Vega and not him. (ECF No. 69 at 16.) In sum, Zuniga is determined to introduce at trial his alleged statements, which tend to inculpate Vega. (ECF No. 108-3 at 2.) Zuniga argues, because Vega cannot cross-examine Zuniga in a joint trial, Vega's Sixth Amendment confrontation rights would be violated, which cannot be cured by any sanitization proposed by the Government. (*Id*.) The Government counters sanitizing Zuniga's alleged statements will not restrict his ability to present a defense that shifts the blame to Vega. (ECF No. 108-1 at 8.) Also, the Government does not intend to introduce Zuniga's alleged proffer statements in the first instance and would only do so if Zuniga presents defenses inconsistent with his alleged proffer statements; the mere possibility of that occurrence does not necessitate a severance. (*Id*.) The Court disagrees with the Government's position.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citation omitted); *see also Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (citation omitted) ("Due process requires that there be an opportunity to present every available defense."). "Criminal defendants have . . . the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). "[T]he erroneous exclusion of critical, corroborative defense evidence violates the right to

present a defense." *Johnson v. Haviland*, No. C 09-4265 MHP (pr), 2011 U.S. Dist. LEXIS 29092, at *18 (N.D. Cal. March 8, 2011) (citing *Washington v. Texas*, 388 U.S. 14, 18–19 (1967)). Therefore, redacting a defendant's statements under *Bruton*, if it prevents the introduction of certain information critical to the determination of guilt, may impair the defendant's ability to present a complete defense. *See United States v. Ludke*, No. 16-CR-175, 2018 U.S. Dist. LEXIS 44349, at *9–10 (E.D. Wis. March 19, 2018) (finding the redaction of a defendant's statement may interfere with his right to present a defense because the redaction "excludes potentially exculpatory information"); *United States v. Yousef*, 327 F.3d 56, 150 (2d Cir. 2003) (citations omitted) ("[R]edactions are permissible so long as the redaction does not distort the statements' meaning, exclude substantially exculpatory information, or change 'the tenor of the utterance as a whole.'"); *c.f. Haviland*, 2011 U.S. Dist. LEXIS 29092, at *19 (finding the redaction of the petitioner's statement did not deprive him the right to present a defense, because "[t]he probative value of the statements on the central issue was weak" and "the redactions were not the sole evidence on the issue"); *United States v. Nelson*, No. 90-3081, 1991 U.S. App. LEXIS 20035, at *15–16 (10th Cir. 1991) (concluding the redaction of a defendant's statements does not deny her an opportunity to present her defense theory "because she is unable to articulate any relevant information that was excluded from the jury's consideration because of the" redaction). Such a risk of impairment "counsels in favor of severance." *Ludke*, 2018 U.S. Dist. LEXIS 44349, at *10; *see also Harris v. Felker*, No. C 07-2084 CRB (PR), 2008 U.S. Dist. LEXIS 98365, at *27 (N.D. Cal. Nov. 24, 2008) ("Denial of severance resulting in the exclusion of essential exculpatory evidence can deny a defendant's rights to present a defense and to due process.").

The Court finds, if Zuniga's alleged statements are redacted to eliminate any reference to Vega's existence, Zuniga will be unable to present a complete defense of innocence. First, the

Government proposes introducing Zuniga's statements allegedly made on March 18, 2018, at the Nightclub, to show Zuniga operated a business at the location. (ECF No. 108-1 at 7–8.) Zuniga must be able to explore these statements to rebut the Government's position that the statements suggest Zuniga's involvement with the Nightclub. Zuniga claims his alleged statements would show Zuniga was at the Nightclub only because Vega had sent Zuniga to the Nightclub to allow the law enforcement access to the location. (ECF No. 108-2 at 4.) Zuniga would be unable to make such a showing if any reference to Vega's existence is eliminated in Zuniga's alleged statements. Second, the Government plans to introduce Zuniga's proffer statements in which Zuniga allegedly provided extensive information about the inner workings of the drug conspiracy, to rebut Zuniga's denial of involvement in the charged drug conspiracy. (ECF No. 108-1 at 8.) Zuniga must be able to explore the proffer statements to show they do not demonstrate his involvement in a drug conspiracy. Zuniga intends to argue the proffer statements were a result of fabrication, motivated by the Government's desire to prosecute and convict Vega. (ECF No. 69 at 16.) Zuniga would be unable to make such an argument if any reference to Vega's existence is eliminated in the proffer statements. In conclusion, a redaction of Zuniga's statement that eliminates any reference to Vega's existence will likely impair Zuniga's constitutional right to present a defense. A joint trial would require such a redaction under *Bruton*, resulting in potential undue prejudice to Zuniga. A severance is therefore favored.

    **C.**    **The Court Finds No Mutually Antagonistic Defenses**

Vega states the Defendants' defenses are mutually antagonistic and sufficiently prejudicial, which warrants a severance. (ECF No. 108 at 15.) Vega predicts Zuniga will argue Vega is in the sole control of the second floor of the Nightclub, and any contraband or firearms discovered there belonged to Vega. (*Id*. at 15–16.) This would be contradictory to Vega's planned defense that Vega

sublet the second floor to Zuniga for what Vega believed to be a legitimate business, and Vega had no control or knowledge of any contraband or firearms discovered there. (*Id*. at 16.) Vega claims, since Defendants are the only two individuals who could have control over the second floor, the Defendants' defenses must be mutually antagonistic. (*Id*.) The Government maintains opposing defense theories at trial are rarely a valid basis for severance, and the Third Circuit does not rely on the "mutually antagonistic" defenses theory. (ECF No. 108-1 at 8–9.) The Government stresses the types of cases that require a severance due to mutually antagonistic defenses are unique and rare. (*Id*. at 9.) Zuniga denies there is a finger pointing contest between him and Vega. (ECF No. 108-2 at 5.) With substantial evidence (other than Zuniga's alleged statements) that tends to inculpate Vega, Zuniga has no reason to stand before a jury and point the finger at Vega. (*Id*.) Instead, Zuniga's planned defense focuses on the Government's motive for prosecuting Zuniga (*id*.), which Zuniga claims is to punish Zuniga for refusing to help the Government convict Vega, the Government's sole interest (ECF No. 109-2 at 3). The Court finds no mutually antagonistic defenses here.

Mutually antagonistic defenses may support a severance. *See United States v. Santos*, No. 18-585, 2020 U.S. Dist. LEXIS 5507, at *24 (D.N.J. Jan. 13, 2020) (considering a number of factors in "determining whether to sever a trial based on mutually antagonistic defenses"). But courts have rarely found mutually antagonistic defenses to "exist in practice." *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (citation omitted). Moreover, "[m]utually antagonistic defenses are not prejudicial *per se*," and do not mandate a severance. *Zafiro v. United States*, 506 U.S. 534, 538 (1993). "Fed. R. Crim. P. 14 . . . leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id*. at 538–39 (citation omitted). The Third Circuit has "explicitly declined to adopt a bright-line rule that mutually antagonistic defenses require

severance." *United States v. Washington*, 543 F. App'x 171, 176 (3d Cir. 2013) (citing *United States v. Balter*, 91 F.3d 427, 432 (3d Cir. 1996)). Therefore, the Court will not grant a severance solely because of mutually antagonistic defenses, if any, between Vega and Zuniga.

Mutually exclusive defenses "exist when acquittal of one codefendant would necessarily call for the conviction of the other," i.e., "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *Voigt*, 89 F.3d at 1094 (citations omitted). "[F]inger-pointing and blame-shifting among coconspirators do not support a finding of mutually antagonistic defenses." *Id*. at 1095 (citations omitted). Here, the Court does not find the defenses of Vega and Zuniga are mutually antagonistic. Vega can be convicted regardless of whether Zuniga is found innocent. After all, there is substantial independent evidence, with which Zuniga is not shown to be connected, that tends to inculpate Vega. (*See* ECF No. 108-1 at 3.)

In conclusion, the Court does not find mutually antagonistic defenses between Vega and Zuniga that may support a severance.

### D. Zuniga's Proffer Statements Are Admissible

The Government insists Zuniga cannot introduce his alleged statements in his defense without testifying at trial, because these statements are inadmissible hearsay. (ECF No. 109 at 1–2.) The Government claims, because Zuniga may introduce the alleged statements only if Zuniga elects to testify, Vega's Sixth Amendment confrontation rights will not be violated because Vega can then confront Zuniga. (*Id*. at 1.) Zuniga counters his alleged statements are not hearsay, because Zuniga will introduce his alleged statements to impeach key Government witnesses (i.e., those that mentioned Zuniga's alleged statement in their reports, warrant and/or complaint affidavits) and to show the Government pursued prosecution of Zuniga in the absence of evidence of guilt. (ECF No. 109-2 at 3.) Zuniga also suggests his statements may be admissible under certain

hearsay exceptions. (*Id*. at 4.) The Court finds Zuniga's statements are admissible.

Zuniga's proposed use of his alleged statements to impeach certain Government witnesses is not a basis to admit the statements. "The ability to use extrinsic evidence to impeach a witness by contradiction is linked to the question of hearsay." *Bratt v. Genovese*, 782 F. App'x 959, 967 (11th Cir. 2019) (citing *United States v. DeCologero*, 530 F.3d 36, 60 (1st Cir. 2008)). "As a result, if what makes the impeaching statement relevant is really the truth of the statement, then the statement is hearsay and inadmissible." *Id*. (citing *DeCologero*, 530 F.3d at 60). Here, Zuniga's proposed impeachment strategy can be summarized as follows: if the Government witnesses introduce reports/affidavits that mention Zuniga's alleged statements, then Zuniga would impeach these witnesses by introducing his own version of the statements that contradict with those in the reports/affidavits. That is to say, Zuniga's ability to impeach the witnesses hinges on the truth of the statements that he intends to introduce. As a result, Zuniga's alleged statements are still inadmissible hearsay.

However, the Court finds Zuniga's statements can be admitted for other reasons. First, his constitutional right will be even more impaired if the statements are totally excluded from admission, because Zuniga's constitutional right to present a defense would be impaired by a redaction of his statements under *Bruton*. "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v. Miss.*, 410 U.S. 284, 302 (1973). Therefore, Zuniga's statements may be admitted even if they are otherwise inadmissible hearsay. Second, Zuniga plans to introduce his alleged statements made on March 18, 2018, to disprove Zuniga's involvement with the Nightclub. (ECF No. 108-2 at 4.) If so, the statements are not offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). Instead, the statements relate to Zuniga's control or

authority over the Nightclub, and therefore are not hearsay evidence. *See United States v. Peveto*, 881 F.2d 844, 853 (10th Cir. 1989) (admitting a traffic ticket as non-hearsay evidence "to show [the defendant] had driven the van and therefore had some control over it"); *FDIC v. Medmark, Inc.*, 902 F. Supp. 1430, 1434 (D. Kan. 1995) (finding a statement offered to show an individual "had apparent authority to borrow the funds" was not hearsay, because the statement was not offered to prove the individual actually borrowed the funds). Third, Zuniga intends to introduce his proffer statements to show Zuniga's motive in making the statements, i.e., fabricating a confession to satisfy the Government's desire to prosecute and convict Vega. (ECF No. 108-2 at 5; ECF No. 69 at 16.) As a result, the proffer statements are admissible under Fed. R. Evid. 803(3), which "provides for an exception to the hearsay rule if the statement is introduced to show the declarant's then existing state of mind, such as his intent, plan or design." *United States v. Donley*, 878 F.2d 735, 737 (3d Cir. 1989). Accordingly, the Court concludes Zuniga may introduce his statements in his defense without testifying at trial.

      **E.**    **Judicial Economy Favors a Severance**

Vega claims a joint trial would take three to four weeks, while an individual severed trial would take only five to seven days. Tr. 13:4–6. The Government argues, if Defendants' cases are severed, there will not be two much shorter trials when multiple defense lawyers will be conducting cross-examinations. *Id*. 16:14–18.

The Court discerns little judicial economy to be gained from a joint trial here. In light of the current COVID-19 pandemic, jury trials will unlikely be conducted in the near future. Though criminal jury trials are anticipated to resume on June 1, 2021, in this Court (Phase III Protocol, March 23, 2021), there will only be one-defendant short jury trials initially. The parties would have to wait much longer for a two-defendant jury trial. However, if a severance is granted,

Defendants' cases would likely be concluded much sooner. Therefore, the judicial economy favors a severance.

In summary, a joint trial here would result in potentially undue prejudice to Zuniga, and would not support judicial economy. Accordingly, a severance is warranted.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motions for severance are **GRANTED**. An appropriate order follows.

Date: April 12, 2021         */s/ Brian R. Martinotti*
                             **HON. BRIAN R. MARTINOTTI**
                             **UNITED STATES DISTRICT JUDGE**